[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 26, 2009
THOMAS K. KAHN
CLERK

No. 05-13595

_____

D. C. Docket No. 95-00573-CV-DTKH

JOHN ERROL FERGUSON, and
DOROTHY FERGUSON, individually
and as Next Friend on behalf of JOHN ERROL FERGUSON,

Petitioners-Appellants,

versus

SECRETARY FOR THE DEPARTMENT OF CORRECTIONS,
Walter A. McNeil,

Respondent-Appellee.

_____

No. 05-13877

_____

D. C. Docket No. 95-00573-CV-DTKH

JOHN ERROL FERGUSON, and
DOROTHY FERGUSON, individually
and as Next Friend on behalf of JOHN ERROL FERGUSON,

Petitioners-Appellees,

versus

SECRETARY FOR THE DEPARTMENT OF CORRECTIONS,
Walter A. McNeil,

Respondent-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____
(August 26, 2009)

Before BIRCH, WILSON and PRYOR, Circuit Judges.

BIRCH, Circuit Judge:

John Errol Ferguson ("Ferguson"), a Florida prisoner convicted of murder and sentenced to death, filed a federal habeas corpus petition pursuant to 28 U.S.C. § 2254 in which he made at least eleven claims. He also moved to stay the federal habeas proceedings based on his alleged incompetency, a motion denied by the district court, which held an evidentiary hearing on the issue and found him competent to proceed with the petition. The court subsequently denied Ferguson's petition in its entirety, but granted a certificate of appealability ("COA") on all of the issues raised therein. Ferguson has appealed the district court's dismissal of nine of his claims and also challenges that court's denial of his motion to stay the

proceedings. The State of Florida filed a cross-appeal regarding the district court's decision to hold an evidentiary hearing on the issue of Ferguson's competency. After thoroughly reviewing the record and the parties' briefs and hearing oral argument, we AFFIRM the district court's denial of Ferguson's petition and motion to stay.

## I. BACKGROUND

A. Factual Background

Ferguson received the death penalty in two Florida state cases in which he was convicted of a total of eight counts of first-degree murder. Six of those counts stemmed from his first trial, which dealt with events that took place in Carol City, Florida in July 1977. The second trial, which involved the other two murder counts, addressed crimes occurring in Hialeah, Florida in January 1978.

1. The Carol City Murders[1]

On the evening of 27 July 1977, Ferguson, posing as a Florida Power and Light employee, received permission from Margaret Wooden to enter her home. After checking several rooms, he drew a gun, tied and blindfolded her, and let into

---

[1] The parties do not dispute the facts and procedural background of these two cases. Our summary of the relevant facts is derived from the Florida Supreme Court's opinions on direct appeal. See Ferguson v. State, 417 So. 2d 639, 640–41 (Fla. 1982) (Ferguson I) (Carol City murders); Ferguson v. State, 417 So. 2d 631, 633 (Fla. 1982) (Ferguson II) (Hialeah murders).

the house two men who joined him in looking for drugs and money. About two hours later, six of Wooden's friends, including the homeowner, Livingston Stocker, came to the house and were searched, tied, and blindfolded by Ferguson and his accomplices. Shortly thereafter, Wooden's boyfriend, Michael Miller, entered the house and also was bound and searched. Miller and Wooden eventually were placed in the bedroom, and the six other bound friends were in the living room.

At some point, a mask on one of Ferguson's friends fell and revealed his face. At the time, Wooden and Miller were kneeling on the floor with their upper bodies sprawled across the bed. Wooden heard shots from the living room, saw a pillow coming toward her head, and then was shot. She witnessed Miller being fatally shot as well. Wooden did not see the shooter, though she did hear Ferguson run out of the room. She managed to escape and ran to a neighbor's house to call the police. When the police arrived, they found six dead bodies, all of whom had their hands tied behind their backs and had been shot in the back of the head. Only two of the victims, Wooden and Johnnie Hall, survived. Hall testified at Ferguson's trial about the methodical execution of the other victims.

2. The Hialeah Murders

On the evening of 8 January 1978, Brian Glenfeld and Belinda Worley, both seventeen, left a Youth-for-Christ meeting in Hialeah, Florida. They were supposed to meet friends at an ice cream parlor, but never arrived. The next morning, two passersby discovered their bodies in a nearby wooded area. Glenfeld had been killed by a bullet to the head and also had been shot in the chest and arm. Worley was found several hundred yards away under a dense growth. All of her clothes, except for her jeans, were next to her body, and she had been shot in the back of the head. An autopsy revealed that she had been raped. At trial, there was testimony that she had been wearing jewelry, but none was found with the bodies. The cash from Glenfeld's wallet, which was found in Worley's purse near her body, also had been removed.

On 5 April 1978, police arrested Ferguson at his apartment pursuant to a warrant for unlawful flight to avoid prosecution in connection with the Carol City murders. At the time of his arrest, police found in his possession a .357 magnum, which was capable of firing .38 caliber bullets, the same kind used to kill Glenfeld and Worley. The gun was registered to Stocker, one of the victims in the Carol City murders. At some point after Ferguson's arrest, he confessed to killing "the two kids," i.e., Glenfeld and Worley.

B. Procedural Background

5

1. Trials and Direct Appeals

Ferguson was indicted in July 1977 for, inter alia, six counts of first-degree murder in connection with the Carol City murders, and in January 1978 for, inter alia, two counts of first-degree murder in connection with the Hialeah murders. He was not incarcerated until his arrest for the Hialeah murders. Both cases went to trial in the Circuit Court for the Eleventh Judicial Circuit of Florida and were presided over by the same judge. Ferguson was tried alone for the Carol City murders and convicted on all counts, except for one of the armed robbery counts. After an advisory sentencing hearing, the jury recommended death. The judge followed the jury's recommendation and imposed six death sentences, along with two consecutive sentences of thirty years of imprisonment for the attempted murders of Hall and Woodson and three sentences of life imprisonment for attempted robberies of three of the victims. At the Hialeah trial, Ferguson mounted an unsuccessful insanity defense and was convicted on two counts of first-degree murder. The jury recommended the death penalty, and the judge imposed two death sentences.

In separate opinions on direct appeal, the Florida Supreme Court affirmed all of the convictions in both cases but vacated and remanded the death sentences due to sentencing errors. With respect to the Carol City case, the court found that

the trial judge had relied on improper aggravating factors. For the Hialeah trial, the court found that the judge had not considered statutory mitigating factors. The Florida Supreme Court noted in both cases that an additional jury sentence advisory verdict would be unnecessary on remand.

A different judge heard the cases on remand because the original trial judge had left the bench in the interim. Without holding an evidentiary hearing or impaneling a jury to make recommendations, the presiding judge imposed eight death sentences for the murders in the two cases. The Florida Supreme Court affirmed those sentences in a consolidated appeal. See Ferguson v. State, 474 So. 2d 208 (Fla. 1985) (Ferguson III).

2. Florida Post-Conviction & Habeas Proceedings

In October 1987, Ferguson and his mother, Dorothy Ferguson, acting as next friend, filed a timely motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, which set forth six claims. For the purposes of this appeal, the relevant claims were an ineffective assistance of counsel ("IAC") claim based on trial counsel's failure to investigate and present

evidence with respect to statutory mitigating factors and a <u>Hitchcock</u>[2] claim based on the trial court's jury instructions regarding mitigating factors. Shortly thereafter, Ferguson moved to stay the proceedings on the grounds that he was incompetent to participate in them or to assist counsel by answering questions. The circuit court denied this motion in February 1989.

Ferguson's counsel subsequently moved to disqualify the post-conviction judge based on <u>ex parte</u> contacts between the judge and the prosecutors. The circuit court denied this motion because it was untimely, was not in compliance with Florida procedural requirements, and did not provide an adequate factual foundation for the belief that the judge would be prejudiced against Ferguson. Ferguson's counsel then filed a petition for a writ of prohibition based on <u>ex parte</u> contacts between the judge and the prosecutors. The Florida Supreme Court denied this petition and the United States Supreme Court denied the subsequent petition for a writ of certiorari on the issue. <u>See</u> <u>Ferguson v. Snyder</u>, 493 U.S. 945, 110 S. Ct. 354 (1989) (mem.) (<u>Snyder I</u>); <u>Ferguson v. Snyder</u>, 548 So. 2d 662 (Fla. 1989) (table) (<u>Snyder II</u>).

---

[2] In <u>Hitchcock v. Dugger</u>, 481 U.S. 393, 398–99, 107 S. Ct. 1821, 1824 (1987), the Supreme Court found unconstitutional instructions to the jury that indicated that the jury could not consider non-statutory mitigating circumstances.

8

In September 1989, Ferguson filed a supplement to his 3.850 petition, in which he raised ten claims, including a claim regarding racially discriminatory peremptory challenges and a Brady[3] claim regarding improper prosecutorial withholding of evidence. In response to a motion by the State, the circuit court struck many of the claims in Ferguson's original and supplemental petitions, including his peremptory challenge claim.[4] The circuit court held an evidentiary hearing in May 1990 on the remaining claims and issued an order the following month denying the remainder of Ferguson's 3.850 motion. One month later, Ferguson moved to supplement his 3.850 petition with an additional ground for relief based on the State's failure to correct false testimony presented at the sentencing phase of the Carol City trial. The circuit court dismissed this motion as untimely. On appeal, the Florida Supreme Court affirmed the circuit court's denial of the 3.850 motion. See Ferguson v. State, 593 So. 2d 508, 513 (Fla. 1992) (Ferguson IV).

---

[3] Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), "places an affirmative duty upon the state to reveal any 'material' evidence in its possession that would tend to exculpate a defendant." Breedlove v. Moore, 279 F.3d 952, 961 (11th Cir. 2002) (Breedlove I) (quotation marks and citation omitted). Under Brady, a state would violate due process if it did not disclose materially exculpatory information in its possession, even if it acted in good faith. See id.

[4] The court also struck a Hitchcock claim Ferguson made in his supplemental motion, part of which addressed the issue of whether the resentencing court erred by not impaneling a new jury.

9

Ferguson also petitioned the Florida Supreme Court for a writ of habeas corpus around the same time, which the court denied. See Ferguson v. Singletary, 632 So. 2d 53, 59 (Fla. 1993) (Ferguson V). In his petition, he raised four claims, only one of which is relevant for this appeal — that he was resentenced without impaneling a new jury or holding an evidentiary hearing. The Florida Supreme Court found that Ferguson had failed to preserve this issue before the circuit court and thus was procedurally barred from raising it in his petition.

### 3. Federal Habeas Proceedings

Ferguson, along with his mother as next friend, filed his first federal habeas petition, the subject of this action, in the United States District Court for the Northern District of Florida in March 1995. He concurrently moved to stay the federal habeas proceedings due to his alleged incompetence, a motion which the district court denied in March 1999. In July 1999, Ferguson filed a motion in the Florida Circuit Court seeking to reinstate several of the claims he raised in his 3.850 motion. He based his motion on Carter v. State, 706 So. 2d 873 (Fla. 1997) (per curiam), which required courts to hold competency hearings in post-conviction proceedings when certain circumstances are present. Ferguson asserted that this constituted a fundamental change in the law and, as a result, applied retroactively. The circuit court denied his motion, and the Florida Supreme Court

affirmed.  See Ferguson v. State, 789 So. 2d 306, 315 (Fla. 2001) (Ferguson VI).

The latter found that Carter applied retroactively but concluded that the circuit

court did not abuse its discretion in finding Ferguson competent to proceed with

his 3.850 petition.

In anticipation of filing the motion to reinstate his 3.850 claims, Ferguson

asked the federal district court in July 1999 to stay the proceedings so that he

could exhaust state remedies.  The district court granted the stay in May 2000,

which it lifted in August 2001.  As part of the latter order, the court permitted

Ferguson to filed an amended habeas petition to address changes in both the law

and his mental state.  In August 2003, the district court again granted him leave to

file an amended petition to reflect changes in the law.[5]  Ferguson filed a second

amended petition a month later and also moved to stay the proceedings because of

his alleged incompetence.

In July 2004, the district court scheduled an evidentiary hearing to

determine whether Ferguson was competent to assist counsel in the habeas

proceedings.  A five-day hearing was held in December 2004, at which six expert

witnesses testified regarding Ferguson's mental state.  On 19 May 2005, the

---

[5] During the period between these last two orders, the district judge originally presiding over this case died and was replaced by the judge who ultimately denied the petition.

11

district court issued an order finding Ferguson competent to proceed and denying the motion to stay the proceedings. That same day, the court also issued an order denying Ferguson's second amended habeas petition. Ferguson appealed both of these decisions, and the State cross-appealed the district court's decision to grant an evidentiary hearing. The district court granted Ferguson's motion for a COA "in its entirety" for the reasons articulated in Miller-El v. Cockrell, 537 U.S. 322, 338, 123 S. Ct. 1029, 1040 (2003). R4-113.

## II. DISCUSSION

On appeal, Ferguson asserts that the district court erred in denying nine claims in his habeas petition relating to various aspects of his trial, resentencing, and state post-conviction proceedings. He also maintains that the court, in finding him competent to proceed with his federal habeas claim and denying his motion to stay, violated his right not to proceed while incompetent. The State, in its cross-appeal, argues that the district court improperly held an evidentiary hearing to determine Ferguson's competency. We address these issues in turn.

A. Legal Standards Applicable to This Appeal

Because Ferguson filed his petition in 1995, one year prior to the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we apply pre-AEDPA law to his claim. See Lindh v. Murphy, 521 U.S. 320, 326–27,

12

336, 117 S. Ct. 2059, 2063, 2068 (1997).  However, since he initiated this appeal after the effective date of AEDPA, all questions of appellate procedure are governed by post-AEDPA law.  See Slack v. McDaniel, 529 U.S. 473, 481–82, 120 S. Ct. 1595, 1602–03 (2000).

"When reviewing the district court's denial of a habeas petition, we review questions of law and mixed questions of law and fact de novo, and findings of fact for clear error."  Nyland v. Moore, 216 F.3d 1264, 1266 (11th Cir. 2000) (per curiam).  A state court's findings of fact are entitled to a presumption of correctness, unless one of the exceptions discussed in § 2254(d) would be applicable.[6]  See Hardwick v. Crosby, 320 F.3d 1127, 1158 (11th Cir. 2003).  We also do not consider issues or arguments raised for the first time on appeal.  See Nyland, 216 F.3d at 1266.

We "may not consider claims that have been defaulted in state court pursuant to an adequate and independent state procedural rule, unless the

---

[6] No presumption of correctness is accorded where:  (1) the merits of a factual dispute were not resolved in a state court hearing; (2) the state court's factfinding procedure was inadequate to afford a full and fair hearing; (3) the material facts were not developed adequately during the state court hearing; (4) the state court lacked jurisdiction over the subject matter or applicant; (5) the state court failed to provide counsel to an indigent applicant; (6) the applicant "did not receive a full, fair, and adequate hearing in the State court proceeding;" (7) "the applicant was otherwise denied due process of law in the State court proceeding;" (8) the record considered as a whole does not fairly support the factual determination.  28 U.S.C. § 2254(d) (1995 ed.).

13

petitioner can show cause for the default and resulting prejudice, or a fundamental miscarriage of justice." Zeigler v. Crosby, 345 F.3d 1300, 1304 (11th Cir. 2003) (per curiam) (quotation marks and citation omitted). A claim also would be "procedurally defaulted if the petitioner fails to raise the claim in state court and it is clear from state law that any future attempts at exhaustion would be futile." Id. (quotation marks and citation omitted). We defer to the state court's findings regarding procedural default. See id.

We review the decision to grant or deny an evidentiary hearing for abuse of discretion. See Kelley v. Secretary for the Dep't of Corr., 377 F.3d 1317, 1333 (11th Cir. 2004). For pre-AEDPA suits, we have held that a district court must hold an evidentiary hearing if:

> (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

Id. at 1334 (quotation marks and citation omitted).

B. Ineffective Assistance of Counsel During Penalty Phase

14

Ferguson asserts that he was denied the effective assistance of counsel during the sentencing phase of both of his trials because his attorneys failed to investigate and present mitigating evidence regarding his family background and history of mental illness. He contends that his counsel failed to pursue all such evidence that reasonably could have been obtained and thus did not conduct the kind of reasonable investigation contemplated in Wiggins v. Smith, 539 U.S. 510, 123 S. Ct. 2527 (2003), and Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). He maintains that this failure was highly prejudicial because of the compelling nature of the undiscovered mitigating evidence.

Ferguson cites a number of relevant facts of which his attorneys were not aware: that he was raised in extreme poverty and had no running water or electricity at times; that he had an alcoholic father who died when Ferguson was thirteen years old, that he had to deal with his mother's abusive boyfriends; and that, at age twenty-one, he was shot four times and almost killed by a police officer. He also asserts that he repeatedly was diagnosed as suffering from paranoid schizophrenia, was placed in multiple mental hospitals during the late 1960s and early 1970s, was twice found not guilty by reason of insanity, and was examined by multiple doctors in the years preceding the Carol City and Hialeah murders, all of whom diagnosed him as schizophrenic, psychotic, or hallucinating.

15

We analyze IAC claims under the two-prong test established in Strickland, which requires us first to determine whether counsel's performance "fell below an objective standard of reasonableness" and then to decide whether this deficient representation prejudiced the petitioner's defense. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. In assessing the first prong of the Strickland test, we apply a "strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Williams v. Allen, 542 F.3d 1326, 1337 (11th Cir. 2008) (quotation marks and citation omitted). For an attorney's performance to be unreasonable, it must fall "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690, 104 S. Ct. at 2066. We have noted that an attorney's duty to conduct a reasonable investigation includes looking at a defendant's background for possible mitigating evidence. See Williams, 542 F.3d at 1337. Though "[t]his duty does not necessarily require counsel to investigate every evidentiary lead," an attorney's "decision to limit an investigation must flow from an informed judgment." Id. (quotation marks and citation omitted). As a result, when evaluating the reasonableness of an attorney's investigation we "must consider not only the quantum of evidence already known to counsel, but also

16

whether the known evidence would lead a reasonable attorney to investigate further." Wiggins, 539 U.S. at 527, 123 S. Ct. at 2538.

With respect to the prejudice prong of the Strickland test, we focus on whether the petitioner has established "that there is a reasonable probability that, but for counsel's unprofessional errors, the result in the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. For a probability to be "reasonable" it must be "sufficient to undermine confidence in the outcome" of the proceeding. Id. at 694, 104 S. Ct. at 2068. We must consider the totality of the evidence to determine whether the petitioner was prejudiced by counsel's errors. See Williams, 542 F.3d at 1342.

### 1. The Carol City Trial

Ferguson maintains that the performance of his counsel in the Carol City case, Fred Robbins, was deficient because Robbins conducted an inadequate investigation into potential mitigating evidence regarding Ferguson's mental history and family background. According to Ferguson, Robbins's mental health investigation consisted solely of reading four reports, written in 1978, that discussed Ferguson's competence to stand trial. Those reports noted that Ferguson had undergone psychiatric examinations during the early 1970s; however, Robbins did not attempt to locate records from those examinations.

17

Additionally, Robbins did not examine Ferguson's criminal records, which would have shown that Ferguson twice had been found not guilty of various crimes for reason of insanity. Ferguson contends that Robbins's family history investigation was equally unreasonable. Robbins spoke with Ferguson's mother and sister but never asked them about his upbringing, and Robbins's conversation with Ferguson's sister addressed only Robbins's potential retention as counsel. Robbins also apparently made no attempt to locate public records about Ferguson or to contact his siblings, even though they lived nearby.[7]

The Florida Supreme Court rejected this claim during the 3.850 proceedings. The court noted that, although Robbins had "not exhaust[ed] all available sources of information . . ., this was not a case in which the attorney conducted only minimal investigation." Ferguson IV, 593 So. 2d at 510. It found that Robbins was aware of Ferguson's mental history and made the tactical decision not to call as witnesses those doctors who had investigated Ferguson. The court found this strategy to be reasonable since presenting such evidence

---

[7] Ferguson also notes that Robbins called just one witness during the sentencing phase, Ferguson's mother, and asked her very few questions, most of which were unilluminating. The transcript of her testimony, which covers less than three pages, confirms this description. She provided very basic background information on Ferguson (i.e., his employment and interests at the time of the Carol City murders), noted that he had always been a good son to her, and confirmed that he had mental problems and had been in a mental hospital, but did not elaborate on the latter two points.

could have opened the door to damaging rebuttal evidence from the State, i.e., that Ferguson had sociopathic tendencies and was exaggerating his symptoms. It therefore concluded that Ferguson had not satisfied his burden of showing either deficient performance or prejudice under the Strickland test. See id. at 511–12.

The district court reached the same conclusion in the federal habeas proceedings. It found that Robbins had conducted some investigation into Ferguson's history of mental illness and, based on that investigation, made "a reasonable tactical decision . . . to avoid potentially greater prejudice from damaging information that would have been introduced to the jury regarding [Ferguson's] malingering and anti-social personality disorder." R4-108 at 32. The court likewise found that the Robbins had conducted a "reasonable investigation into [Ferguson's] background" and made a "reasonable tactical decision" in light of this investigation to focus on creating lingering doubt about his guilt. Id. It also determined that, even if the investigation was unreasonable, any failure in that regard would not undermine confidence in the outcome of the proceedings given the overwhelming aggravating factors involved. The court

19

therefore concluded that Ferguson had not met the second prong of the <u>Strickland</u> test.[8]

Even assuming <u>arguendo</u> that Robbins's performance was deficient, Ferguson has not shown prejudice resulting from that deficient performance. The resentencing judge found five aggravating circumstances in this case: (1) Ferguson previously had been convicted of "three felonies involving the use of, or threat of, violence to some person[9];" (2) the murders were committed while Ferguson "was engaged in the commission of multiple robberies;" (3) the murders were committed "for the purpose of avoiding or preventing a lawful arrest;" (4) the murders were "especially heinous, atrocious and cruel;" and (5) the crimes involved homicides "committed in a cold, calculated, and premeditated manner

---

[8] Although the district court's findings indicate that Ferguson had not met the first prong of the <u>Strickland</u> standard, the court never explicitly concluded that.

[9] The felonies were a 1965 conviction for assault with intent to commit rape, a 1971 conviction for robbery, and a 1976 conviction for violent resistance to a police officer.

without any pretense of moral or legal justification."[10]  App. MM, Vol. 3 at 1–6.[11]

By comparison, the only possible mitigating circumstance identified by any of the courts assessing Ferguson's case was that there was some evidence to indicate that Ferguson might have been suffering severe mental disturbance at the time of murders and that he had an impaired capacity to appreciate the criminality of his conduct.[12]  All of these findings are entitled to a presumption of correctness, and the parties identify no basis for questioning this presumption.  See Hardwick, 320 F.3d at 1158.

---

[10] The fifth factor was addressed for the first time on resentencing, though the Florida Supreme Court found no error in the circuit court's reliance on it.  The court previously had found the other four factors to be present during the direct appeal.  The original trial court found two other aggravating circumstances to be present — that Ferguson committed the crimes while under a sentence of imprisonment and that, in committing the crimes, Ferguson knowingly created a great risk of death to a number of people.  However, the Florida Supreme Court negated both of those findings on direct appeal.

[11] The record in this case consists of the district court filings along with the various state court filings, the majority of which were filed as exhibits to R2-53.  The state court filings were subdivided into various letter-designated appendices, ranging from A to NN.  Appendices A to JJ are the briefs, petitions, and opinions from those various proceedings.  Appendices KK and LL are the records from the direct appeal of the Carol City and Hialeah trials, respectively.  Appendix MM is the record from the resentencing, and Appendix NN the record from the state post-conviction, or 3.850, proceedings.  Within this opinion, references to documents in R2-53 will refer to the appendix and page number, i.e., "App. NN at 1000."  Because the pleadings and transcripts in Appendices KK, LL, and MM are collected in separately paginated volumes, references to documents in those appendices will also list the volume number, i.e., "App. MM, Vol. 1 at 4."

[12] This finding was made by the circuit court on remand and referenced in the Florida Supreme Court's opinion on appeal from resentencing.  The Florida Supreme Court never adopted this finding, however, and, in fact questioned its veracity.

21

In our view, the aggravating circumstances far outweigh any mitigating factors, even taking into account the evidence that Robbins failed to uncover. The facts of this case are extreme, including multiple execution-style killings after a prolonged period in which the victims were bound and blindfolded. We agree with the resentencing court that "[t]he entire action of [Ferguson] and his co-conspirators reflects not only an absolute lack of concern for human life or dignity but also a barbaric cruelty." App. MM, Vol. 3 at 6. As a result, we do not believe it is reasonably probable that the evidence Ferguson cites would lead a jury to disregard such cruel circumstances and impose a different sentence. We thus find that Ferguson has not established prejudice from this ineffective assistance and therefore conclude that the district court correctly denied habeas relief with respect to this part of Ferguson's IAC claim.

2. The Hialeah Trial

Ferguson also contends that his counsel's performance during the sentencing phase of the Hialeah trial was deficient. He asserts that Bruce Phelps, the attorney in charge of his penalty phase presentation, made no meaningful effort to investigate Ferguson's family history. In support of this argument, Ferguson cites Phelps's failure to discuss potential mitigating evidence with Ferguson's siblings and to recall Ferguson's mother as a witness during sentencing after she

22

broke down on the witness stand before he could elicit any meaningful testimony.[13] Ferguson also maintains that Phelps was deficient in not presenting evidence of Ferguson's mental illness during sentencing. Ferguson concedes that Phelps put forth mental health history evidence during the guilt phase of the trial as part of an unsuccessful insanity defense. Nevertheless, Ferguson contends that Phelps had a responsibility to recall the mental health experts so they could speak directly to the statutory mitigating factors because of the inherent difference between those factors and the requirements needed to make out an insanity defense. Furthermore, Ferguson maintains that this deficiency prejudiced his case, particularly since at least two jurors voted against the death penalty, even in the absence of the missing evidence.

The Florida Supreme Court rejected Ferguson's arguments during the 3.850 proceedings, finding both that Phelps's performance had not been deficient and that there was no resulting prejudice to Ferguson even assuming deficiency. The court noted that, although Phelps failed to present any mitigating evidence regarding Ferguson's mental history during the penalty phase, it was reasonable to assume that there would have been no net benefit to presenting more mental health evidence since there already had been testimony about Ferguson's mental health

---

[13] Ferguson's mother was the sole witness called by the defense during sentencing.

during the guilt phase. The court also noted that Phelps had spoken with family members and found that his failure to recall Ferguson's mother was "reasonable in light of her emotional state." Ferguson IV, 593 So. 2d at 511.

The district court in the federal habeas proceedings reached a similar conclusion. It found that Ferguson's counsel made a "tactical decision to focus on mental health mitigators during sentencing[] and to appeal to the jury's sense of sympathy for [Ferguson's] mental health condition." R4-108 at 34. The court deemed it reasonable, in light of this trial strategy, for Ferguson's counsel not to recall his mother or to reintroduce potentially duplicative mental health evidence during the penalty phase of the trial. In addition, the court noted that there was no reasonable probability that any juror would find that the unpresented mitigating evidence outweighed the "overwhelming aggravating factors" present in the case.[14] Id. at 35.

As in the Carol City trial, even if we assume that Ferguson's Hialeah trial counsel was deficient during the penalty phase, it is not reasonably probable that the jury would have imposed a different sentence had they considered the missing mitigation evidence. On resentencing, the circuit court found six aggravating

_____

[14] As with the district court's ruling on IAC in the Carol City case, it made no explicit finding that Ferguson had not met the first Strickland prong, although the cited evidence would indicate that it tacitly reached that conclusion.

factors: (1) Ferguson previously had been convicted of four felonies involving the use or threat of violence[15]; (2) the murders occurred while Ferguson was "engaged in the commission of rape and robbery;" (3) the murders were committed to avoid a lawful arrest; (4) the murders were "committed for pecuniary gain;" (5) the murders were "especially heinous, atrocious, and cruel;" and (6) Ferguson's crimes were committed "in a cold, calculated, and premediated manner without any pretense of moral or legal justification."[16] App. MM, Vol. 3 at 13–16. The only potential mitigating factor the court identified was that Ferguson might have been suffering from extreme mental disturbance and been impaired in his ability to appreciate the criminality of his conduct.

We find that the aggravating factors significantly outweighed any mitigating evidence, including that which was not presented to the jury. The facts of the Hialeah murders are just as cruel and shocking as those of the Carol City killings. One of the victims, Worley, suffered extreme physical abuse, including being apparently raped, prior to being shot in the head and left partially nude by the

---

[15] These are the three felonies described supra n.10, along with the Carol City murders.

[16] As in the Carol City case, the "cold, calculated, and premeditated" factor was addressed for the first time on resentencing, though the Florida Supreme Court found no error in the circuit court's reliance on it. The original trial court also found a fifth aggravating factor, that Ferguson committed the crimes while under a sentence of imprisonment; however, the Florida Supreme Court overturned this finding since he was not confined in prison at the time and was not supposed to be.

25

roadside. The other victim, Glenfeld, was shot twice, both before and after

Worley had been sexually assaulted, and murdered. Admittedly, at least two jurors

decided not to impose the death penalty even in the face of such circumstances.[17]

Nevertheless, the missing evidence likely would not have changed the outcome.

Notably, most of the evidence regarding Ferguson's medical background already

had been presented during the guilt phase of the trial, so the jury considered that

evidence in sentencing him to death. The missing evidence thus primarily

involved Ferguson's family history. Although it is <u>possible</u> that evidence of

Ferguson's mental history might have caused some jurors to recommend a

sentence rather than death, we do not find that this was <u>reasonably</u> <u>probable</u> given

the wealth of aggravating circumstances. <u>See</u> <u>Parker v. Secretary for the Dep't of

Corr.</u>, 331 F.3d 764, 783 & n.16 (11th Cir. 2003) (noting that the proper standard

of review is "whether the jury's failure to hear the mitigating evidence undermines

the confidence in its verdict, thus demonstrating a reasonable probability of a

different result" rather than whether the result "would have been different absent

the deficient performance") (alterations, quotation marks, and citation omitted).

---

[17] The actual number of jurors voting against the death penalty is unknown. At trial, the court began polling the jurors to confirm that the majority of the jury had voted to sentence Ferguson to death. Two of the jurors misunderstood and indicated that they personally had voted against a sentence of death; however, the court corrected this erroneous assumption before other jurors had an opportunity to signal their vote.

26

Accordingly, we find that Ferguson has not met the prejudice prong and conclude that the district court correctly denied Ferguson habeas relief with respect to his IAC claim regarding the penalty phase of the Hialeah trial.[18]

C. *Hitchcock* Error

Ferguson contends that the judge's instructions to the jury at both the Hialeah and Carol City trials limited the jury's ability to consider non-statutory mitigating factors, in violation of Hitchcock.  He maintains that such limitation thus denied him a fair sentencing in both cases.  This claim requires us to determine first whether a Hitchcock error occurred and then whether any such error was harmless.

We have noted that, "[a]lthough whether a Hitchcock error occurred is a legal question, it is almost entirely dependent upon the answer to a question of fact: did the sentencing judge consider any and all nonstatutory mitigating circumstance evidence that was presented to him?"  Quince v. Crosby, 360 F.3d 1259, 1266 (11th Cir. 2004) (quotation marks and citation omitted).  Accordingly, we have deemed statements by the Florida Supreme Court "that the sentencing

---

[18] Ferguson also requests an evidentiary hearing on the IAC issue because the record did not support the state courts' factual determinations regarding the strategic intent of counsel in both cases.  See Kelley, 377 F.3d at 1334.  In this case, the record provides a sufficient basis for the state courts' findings and an evidentiary hearing would be unnecessary.

judge did not limit his consideration to only statutory mitigating circumstances" to be findings of fact that, for pre-AEDPA cases, should be upheld if it "is fairly supported by the record." Id. at 1267. Ferguson asserts that this standard is inapplicable here, because the issue is whether the jury, not the judge, limited its consideration to statutory mitigating factors, a question for which there would be no factual basis because the jury does not make written findings of fact. He suggests that we instead are analyzing the propriety of jury instructions, which would be a question of law subject to de novo review. See United States v. Drury, 396 F.3d 1303, 1313 (11th Cir. 2005).

We believe the correct approach is to treat Ferguson's claim as raising a mixed question of law and fact. The validity of the jury instructions under Hitchcock would be a legal question. However, determining what the jury relied on in sentencing Ferguson entails a factual inquiry looking solely at the text of the instructions. Admittedly, since the jury does not have to make written findings, we cannot say for certain whether jurors actually limited their consideration to statutory mitigating factors. Nevertheless, we deem it appropriate to assume that, in sentencing Ferguson, the jury followed the court's instructions and that, as a factual matter, the scope of its analysis would reflect how a reasonable person would view the instructions. See United States v. Siegelman, 561 F.3d 1215, 1239

28

(11th Cir. 2009) (per curiam) ("The jury is presumed to follow the district court's instructions."). We therefore evaluate de novo the issue of whether a Hitchcock error occurred. See Nyland, 216 F.3d at 1266. In so doing, we must examine the totality of the circumstances in which the instructions were given. See Card v. Dugger, 911 F.2d 1494, 1522 (11th Cir. 1990).

Even if we find a Hitchcock error to have occurred here, we can still deny Ferguson's claims if we determine that the error was harmless. Whether an error was harmless is a mixed question of law and fact that we review de novo. See Smith v. Singletary, 61 F.3d 815, 817 (11th Cir. 1995) (per curiam). For Hitchcock errors, we apply the harmlessness standard articulated in Brecht v. Abrahamson, 507 U.S. 619, 113 S. Ct. 1710 (1993).[19] See Sims v. Singletary, 155 F.3d 1297, 1315 (11th Cir. 1998). In so doing, we focus on "whether the error had substantial and injurious effect or influence in determining the jury's verdict." Id. (quotation marks and citations omitted). For the error not to have been harmless, there must be "more than a reasonable possibility that the error contributed to the sentence." Horsley v. State of Ala., 45 F.3d 1486, 1493 (11th Cir. 1995).

---

[19] The district court appears to have evaluated harmless error under the standard articulated in Chapman v. California, 386 U.S. 18, 87 S. Ct. 824 (1967), i.e., whether an error was "harmless beyond a reasonable doubt." See Sims, 155 F.3d at 1315 (quotation marks and citation omitted). However, in Brecht, the Court concluded that the Chapman standard did not apply to habeas review, and instead substituted the "substantial and injurious effect" test. See id. (quotation marks and citation omitted).

1. <u>The Carol City Trial</u>

At the beginning of the sentencing phase of the Carol City trial, the judge told the members of the jury that he later would instruct them as to the mitigation factors that they "may consider." App. KK, Vol. 4 at 1023. After closing arguments, he stated that "[t]he mitigating circumstances you may consider, if established by the evidence, are these" and then listed the statutory mitigating factors. <u>Id.</u> at 1074–75. He then described the standard of proof for aggravating factors and told the jurors that, although they were limited to considering only the aggravating circumstances he had listed, there was "no such limitation upon the mitigating factors" that could be considered. <u>Id.</u> at 1075.

Ferguson contends that he was denied a fair sentencing at the trial because these instructions unconstitutionally precluded the jury from considering non-statutory mitigating evidence in deciding whether to impose the death penalty, in violation of <u>Hitchcock</u>. He asserts that any error from the court's earlier instructions was not cured by the judge's later statement indicating that there was no limitation on the mitigating factors. In addition, Ferguson notes that the

prosecutor made comments during closing arguments that could be interpreted as supporting the notion that only statutory mitigating factors could be considered.[20]

Both the state courts and district court rejected this claim. In the 3.850 proceedings, the Florida Supreme Court found that there had been no Hitchcock error because the trial judge's later instruction "clearly" informed the jurors "that they were not limited to consideration of the statutory mitigating circumstances." Ferguson IV, 593 So. 2d at 512. Because it made this finding, the court did not address the issue of harmless error. On federal habeas review, the district court determined that the Florida Supreme Court's statements regarding whether the sentencing judge limited consideration to statutory mitigating factors constituted findings of fact. Since the record supported the Florida Supreme Court's finding that there had not been such a limitation in the Carol City trial, the court denied Ferguson's claim. Neither the Florida Supreme nor the federal district court addressed the issue of harmless error.[21]

---

[20] Prior to the judge's instructions, the prosecutor told the jury that "the Court has enumerated what mitigating factors should apply in this case . . ., and you are bound by this law, and the judge will tell you so." App. KK, Vol. 4 at 1060. The prosecutor then described the statutory mitigating factors and stated, "Those are the circumstances that you have to consider, and if those circumstances apply in this case, you must follow the law." Id. at 1062.

[21] The circuit court in the 3.850 proceedings found both that there had been no Hitchcock error and that, even if there had been such an error, it was harmless because the non-statutory mitigating evidence was insignificant in comparison to the overwhelming aggravating circumstances.

31

Ferguson maintains that the court's instructions were contradictory and that the court made no effort to indicate which instruction should control or to explain the discrepancy in its statements. He cites Hall v. Kelso, 892 F.2d 1541, 1545 (11th Cir. 1990), for the principle that a later, correct instruction cannot cure an earlier, contradictory instruction in the absence of a clarifying statement by the court. It could be argued that the court's instructions were more complementary than contradictory, which would make Hall inapplicable here. Under this reading, the court's initial instruction merely would indicate that jurors could consider the statutory factors described thereafter instead of limiting the jury's inquiry to solely those factors. The later instruction would inform the jurors that they could consider any non-statutory mitigating factors as well, and thus would have added to the more restrained scope of inquiry suggested by the earlier instruction.[22] Any infirmities in the initial instruction thus would have been cured by the court's subsequent statement.

---

[22] In Sims, we found no Hitchcock error based on a similar rationale. In that case, the judge told the jury, "The mitigating circumstances which you may consider if established by the evidence among others are these," and then listed the statutory mitigating factors. Sims, 155 F.3d at 1315 (quotation marks omitted). Focusing on the use of the phrase "among others," we found that this "instruction did not preclude the jury from considering all the mitigating evidence presented by defense counsel but, instead, instructed them to consider all the evidence that was presented." Id. Unlike here, though, Sims involved a single instruction rather than two separate, and potentially conflicting, instructions.

Nevertheless there are good reasons for declining to adopt that reading. The court's initial instruction, on its own, clearly would have limited the jury's consideration to statutory factors and thus violated Hitchcock. See Jones v. Dugger, 867 F.2d 1277, 1279 (11th Cir. 1989) (finding Hitchcock error with respect to a virtually identical instruction). Additionally, though the court made a later, non-limiting statement, this "proper instruction was not linked to the erroneous one in such a way as to explicate it or to make clear that the proper instruction was preeminent and controlling." Hall, 892 F.2d at 1545. Furthermore, the prosecutor's statements strongly suggested that the jury's consideration was limited to the statutory factors and therefore "exacerbated the impact of the court's erroneous instruction." Jones, 867 F.2d at 1279 n.4. Bearing all of this in mind, we assume that there was a Hitchcock error here and thus turn to the issue of whether that error was harmless.

Ferguson contends that the Hitchcock error was not harmless due to the strength of the mitigating evidence the jury did not consider as a result of the error. In particular, he cites the evidence produced at trial that indicated that the murders were not premeditated, that at least five of the six murders were performed by one of his co-defendants, Marvin Francois, and that he tried to comfort some of the victims. Ferguson contends that the jury reasonably could

33

have concluded from this evidence that he was an unwilling accomplice to Francois's actions and that he tried to stop the murders. Ferguson also mentions that the jury witnessed his strange behavior at trial, including stripping off his clothes in the courtroom, and that there was evidence at trial regarding his mental problems and prior hospitalization. Additionally, Ferguson asserts that we should consider the cumulative evidentiary effect of the various trial errors, i.e., the mitigating evidence that Robbins failed to produce due to his ineffective assistance as well as the non-statutory mitigating evidence actually produced.

As a preliminary note, we cannot consider as part of our harmless error analysis any mitigating evidence that Robbins failed to produce. In performing the harmless error analysis for a Hitchcock claim, we "must consider both the mitigating evidence presented at sentencing as well as mitigating evidence that could have been presented, but which the state trial court prevented the petitioner from presenting." Smith, 61 F.3d at 817 (quotation marks and citation omitted). "In other words, [we] must consider all potential mitigating evidence that would have been presented, but for the Hitchcock error." Id. In this case, there is no indication that the trial court inhibited Ferguson's ability to present the missing mitigating evidence, and Ferguson identifies no case law supporting the notion

34

that a harmless error analysis for a <u>Hitchcock</u> claim should examine such evidence.[23]

We thus must determine whether the non-statutory evidence Ferguson actually presented at trial, which he asserts the jury did not consider, would have substantially influenced the outcome if the jury had taken it into account. In fact, the jury may have considered some of this evidence. One of the statutory mitigating circumstances included in the jury instructions was that Ferguson was an accomplice to the offense and played a relatively minor role in its commission. The jury could have viewed evidence regarding Ferguson's alleged lack of responsibility for the murders in the crime as falling under this category.[24] If this were the case, the only evidence that would have been unconsidered was that respecting the lack of premeditation, which would not be enough to alter the outcome in the face of the aggravating circumstances.

---

[23] Although Ferguson cites three cases from our sister circuits in support of his proposition, they all involve separate claims alleging cumulative error from the effect of multiple harmless errors rather than as part of the analysis of a single harmless error issue. See <u>Miller v. Mullin</u>, 354 F.3d 1288, 1301 (10th Cir. 2004) (per curiam); <u>Alcala v. Woodford</u>, 334 F.3d 862, 893–94 (9th Cir. 2003); <u>Anderson v. Sternes</u>, 243 F.3d 1049, 1055 (7th Cir. 2001).

[24] A similar argument could be made with respect to the mental illness evidence and the judge's instructions regarding lack of ability to appreciate the effect of one's actions and the commission of the offense while under mental duress. However, the jury's ability to consider that evidence would be limited by the high standards required to meet either of those factors, i.e., <u>extreme</u> mental or emotional disturbance and <u>substantial</u> impairment. See <u>Booker v. Dugger</u>, 922 F.2d 633, 636 (11th Cir. 1991) (commenting on the difficulty in meeting these standards).

35

Even if we assume that the jury did not take into account any of the evidence Ferguson categorizes as non-statutory, there is good reason to believe that the evidence, had it been considered, would not have altered the outcome of the trial. Notably, we can find only one case, Smith, in which we found that a Hitchcock error was not harmless under the Brecht standard.[25] See Smith, 61 F.3d at 819. The non-statutory evidence in Smith presents a much stronger case for non-harmlessness than does that in Ferguson's. In Smith, there were at least fourteen different pieces of mitigating evidence that the jury did not consider because of the Hitchcock error. See id. at 817–18. The non-statutory mitigating evidence presented at the Carol City trial also was put forth in Smith, i.e., that the defendant did not perform the actual murders, that he was influenced by the dominant personality of an accomplice, and that he had mental difficulties — in Smith, stemming from alcohol and substance abuse. See id. However, in Smith there were a number of other mitigating factors that were not present in Ferguson's case. For instance, Smith was a minor at the time of the crime, was intoxicated and under the influence of marijuana when the murders occurred, had a non-

---

[25] Ferguson cites various cases in which we found Hitchcock errors were not harmless; however, all of those cases were decided under more lenient harmless error standards, i.e., whether "the evidence excluded from the jury's sentencing deliberations by a limiting instruction could have had any effect on the jury's recommendation." Booker, 922 F.2d at 635; see also Delap v. Dugger, 890 F.2d 285, 306 (11th Cir. 1989) (finding Hitchcock error "not harmless beyond a reasonable doubt").

36

violent personality, and suffered from epilepsy. See id. Additionally, one of

Smith's accomplices, who had been found guilty of the same number of felonies as

Smith, was given a life sentence rather than the death penalty. See id. at 817.

Bearing in mind this precedent, we do not believe that there is a reasonable

probability that the non-statutory evidence, had it been considered by the jury,

would have altered Ferguson's sentence. Although Smith involved a similar array

of aggravating factors, the mitigating circumstances in that case presented a much

stronger argument against a death sentence than the mitigating evidence here.[26]

Additionally, as previously noted, the aggravating factors here are quite numerous

and compelling. Particularly since the jury may have considered much of this

mitigating evidence as part of various statutory factors, we do not believe that

there was "more than a reasonable possibility that the [Hitchcock] error

contributed to [Ferguson's] sentence." Horsley, 45 F.3d at 1493. Since the error

thus did not have a "substantial and injurious effect or influence in determining the

jury's verdict," we conclude that it was harmless and that the district court

---

[26] Smith involved six aggravating factors: (1) that the defendant had two prior felony convictions; (2) "that he committed the murder "in the course of a kidnapping," (3) "to avoid arrest," and (4) "for pecuniary gain;" "(5) that the murder was heinous, atrocious, and cruel; and (6) that the murder was cold, calculated, and premeditated." Smith, 61 F.3d at 816.

37

correctly denied Ferguson habeas relief for this claim. Sims, 155 F.3d at 1315 (quotation marks and citations omitted).

2. The Hialeah Trial

At the Hialeah trial, the judge's first two instructions relating to mitigating circumstances were essentially the same as those in the Carol City trial. Unlike in the Carol City proceedings, though, he made no subsequent statement informing the jurors that they were not limited in the mitigating factors they could consider. The parties concede that these instructions constituted a Hitchcock error. We therefore must decide whether this error was harmless under the Brecht standard.

The Florida Supreme Court rejected Ferguson's Hitchcock claim during the 3.850 proceedings.[27] It found that there had been a Hitchcock error in the Hialeah trial but concluded that the error was harmless "beyond a reasonable doubt." Ferguson IV, 593 So. 2d at 513. The court described the additional mitigating evidence presented at the 3.850 hearing, which dealt Ferguson's family history, as "relatively insignificant." Id. at 512. It then went on to note that the mitigating

---

[27] The circuit court in those proceedings found that the Hitchcock error was harmless beyond a reasonable doubt since the trial court had told the jury to consider all of the evidence. The trial judge instructed the jury to "carefully weigh, sift and consider the evidence, and all of it, realizing that human life is at stake." App. LL, Vol. 6 at 1463–64.

38

evidence was "especially insignificant in light of the heinous nature of the killings in this case and the overwhelming aggravating factors."[28] Id.

The district court agreed that the Hitchcock error "was harmless beyond a reasonable doubt." R4-108 at 37. In support of this conclusion, the court cited both the egregiousness of the aggravating circumstances and the fact that the jury already had discounted the non-statutory mental health evidence when it considered and rejected Ferguson's insanity defense. The court also agreed with the Florida Supreme Court that the outcome would have been the same even if the non-statutory mitigating evidence produced at the 3.850 hearing had been taken into account.

Ferguson notes that there was a wealth of evidence produced at trial regarding his psychological problems and that he exhibited bizarre behavior during the course of the trial. He asserts that the jury did not consider this evidence in imposing sentence because his counsel presented it only in terms of an insanity defense and did not connect it to a statutory mitigating factor. As previously noted, there is a reasonable argument that the jury did not take the mental health evidence into account because of the language of the jury

---

[28] It is unclear whether, in making this statement, the court was describing solely the mitigating evidence from the 3.850 hearing or all of the mitigating evidence in the case.

39

instructions regarding mental duress and inability to appreciate the impact of one's actions. See n.24 supra. However, the judge's instruction to consider and weigh all of the evidence may mitigate the fact that counsel did not connect the evidence to a statutory mitigating factor.

Even if we accept Ferguson's contention that the jury did not consider the evidence, we do not believe that the Hitchcock error would have changed the outcome. The evidence Ferguson cites here is essentially the same as that which he referenced with respect to the prejudice prong of his ineffective assistance claim. In fact, it may even be less since Ferguson has not identified a basis for us to take into account evidence that was not produced at trial. See Smith, 61 F.3d at 817. Since that evidence was insufficient to meet Strickland's requirement that there be a "reasonable probability" of affecting the outcome, it likewise would not be enough to show the "substantial and injurious effect or influence" on the verdict required under Brecht. Sims, 155 F.3d at 1315 (quotation marks and citations omitted). Furthermore, as in the Carol City case, it is highly improbable that enough jurors would find that the multiple egregious aggravating factors were outweighed by this unconsidered mitigation evidence. We therefore conclude that the Hitchcock error in the Hialeah trial was harmless and that the district court properly denied Ferguson habeas relief with respect to this claim.

40

D. *Brady* Claim

Ferguson contends that the prosecution in both trials violated his due process rights, as described in Brady, by failing to disclose evidence that three of its witnesses, detectives Robert Derringer, Charles Zatrepalek, and Michael MacDonald ("the detectives"), were under investigation for drug trafficking, conspiracy, theft, and civil rights violations.[29] Ferguson asserts that all of the requirements to establish a Brady claim are present here and that the district court erred in failing to grant him habeas relief or, in the alternative, to hold an evidentiary hearing on the issue.[30] He contends that the State possessed evidence of the detectives' ongoing criminal conduct at the time of the trials because it had constructive, if not actual, knowledge of their illegal activities and the knowledge of the detectives could be imputed to the prosecution. He also maintains that this evidence was material because there were similarities between the charges against Ferguson and the activities in which the detectives were involved, i.e., stealing money from drug dealers and threatening to kill people. According to Ferguson,

[29] This conduct ultimately led to a 40-count indictment and multiple convictions for various individuals, including Derringer. See United States v. Alonso, 740 F.2d 862, 865 (11th Cir. 1984).

[30] Although the 3.850 evidentiary hearing ostensibly addressed the Brady issue among others, Ferguson contended that he could not offer a "full Brady presentation" at that time because his motion for discovery on that topic had been denied and the prosecution files to which he had access did not contain the necessary information about the arrests. App. NN at 2883.

41

the prosecution's failure to provide this evidence undermines confidence in the verdicts because of the critical role the detectives played at trial.

The state courts rejected Ferguson's Brady claim argument during the 3.850 proceedings. The circuit court made three principal findings: (1) that evidence concerning the detectives' involvement in the illegal activities was not material under the standard articulated in United States v. Bagley, 473 U.S. 667, 105 S. Ct. 3375 (1985); (2) that the State did not possess the evidence because it had no actual knowledge of the illegal activities and such knowledge could not be imputed to it; and (3) that it was not reasonably probable that the evidence, if admissible, would have changed the outcome of the proceedings. The Florida Supreme Court found the Brady claim to be without merit and dismissed it summarily.

The district court determined that Ferguson had failed to state a Brady claim. The court found that each of the circuit court's three findings could serve as an independent basis for denying Ferguson's claim. The court agreed that the evidence would have been inadmissible under Florida law and thus was not material for the purposes of assessing the claim. It found that the State did not have possession of the impeachment evidence for the purposes of a Brady violation since it had no actual knowledge of the evidence and the prosecution's

42

duty to inquire into such evidence would have been trumped by the detectives'

Fifth Amendment rights  The court also found that the results of the proceedings

would not have changed if the impeachment evidence had been presented.

For a petitioner to prevail on a Brady claim, he "must establish (1) the

government possessed evidence favorable to him; (2) the defendant did not

possess the evidence and could not have obtained it with reasonable diligence; (3)

the government suppressed the favorable evidence; and (4) the evidence was

material." Lamarca v. Secretary, Dep't of Corr., 568 F.3d 929, 941 (11th Cir.

2009) (quotation marks and citation omitted).  Evidence would be "material" if it

is reasonably probable that a different outcome would have resulted if the

government had disclosed the evidence.  See id.  A "reasonable probability" is "a

probability sufficient to undermine confidence in the outcome."  Id. (quotation

marks and citation omitted).  Because we find that the evidence was not material

for the purposes of Brady, we need not address the other prongs.

The Florida Supreme Court has held that, as a general matter, if a state

witness "were presently or recently under actual or threatened criminal charges or

investigation leading to such criminal charges," a defendant has the right to bring

out the circumstances behind those charges on cross-examination.  Reed v. State,

875 So. 2d 415, 431 (Fla. 2004) (per curiam) (quotation marks and citation

43

omitted). However, when that "state witness is merely under investigation," the defendant would not have this right when the investigation is either too remote in time from or not related or relevant to the case at issue. Id. In Breedlove I, we noted that "evidence of unrelated illegal activity by a police officer testifying for the state would likely not have been admissible under Florida's law of evidence, and thus immaterial for Brady purposes." Breedlove I, 279 F.3d at 964 (citing Delap, 890 F.2d at 298).

Since the detectives had not been charged at the time of Ferguson's trials, evidence of their illegal activities would have been admissible only if the investigations were related to the cases against Ferguson and were not too remote in time from his trials.[31] We thus must determine whether Ferguson has shown that there was sufficient relation between those investigations and his own case. According to Ferguson, such a connection existed because the detectives were charged with crimes that bore a resemblance to his own. In particular, he cites the fact that the detectives' crimes involved ripping off drug dealers[32] in the same

---

[31] Though neither party raises it as an issue, it should be noted that there is no retroactivity problem in applying these Florida precedents since there was case law at the time of the trials supporting essentially this standard. See Fulton v. State, 335 So. 2d 280, 283–84 (Fla. 1976).

[32] This was a stated purpose of the home invasion that precipitated the Carol City murders.

44

location and during the same time frame as the Carol City crimes, and that these crimes involved stealing money from a private home and threats to kill people, if not actual killings. See Breedlove I, 279 F.3d at 956. He asserts that these similarities make it distinctly plausible that the detectives had a motivation to resolve Ferguson's case quickly and possibly to throw suspicion on him for their own crimes.

We addressed essentially the same argument in Breedlove I, which involved a Brady claim based on the alleged suppression of evidence regarding illegal activities by many of the same detectives who testified at Ferguson's trials. See Breedlove I, 279 F.3d at 959–64. In that case, we found it was not objectively unreasonable for the Florida Supreme Court to determine that evidence of the detectives' crimes was unrelated, and thus not material, to the case against the petitioner, who had been convicted of felony murder connected with a burglary of a house in Miami. See id. at 954–55, 963. Because Breedlove I involved a post-AEDPA inquiry into objective unreasonableness, rather than the de novo review applicable here, our holding in that case would not be binding here. See id. at 963.

Even though Breedlove I is not controlling, Ferguson has failed to provide a rationale for us to reach a different conclusion with respect to materiality. The purported connections between Ferguson's offenses and the detectives' crimes are

45

too attenuated to meet the materiality test. The criminal scheme in which the detectives took part included a range of drug-related felonies not seen in the Carol City murders, i.e., racketeering, possession of various drugs with the intent to distribute, money counterfeiting, and tax evasion. See Alonso, 740 F.2d at 865 n.1. Additionally, the conspirators used a falsified police warrant to gain entry to the home, a modus operandi distinct from and likely unavailable to Ferguson and his compatriots during the Carol City murders. See id. at 866. The detectives also may not have been aware of the investigations at the time of Ferguson's trials and thus would not have had a reason to implicate Ferguson for their crimes. See Breedlove v. State, 580 So. 2d 605, 607 (Fla. 1991) (Breedlove II) (per curiam). If, as Ferguson asserts, the detectives were motivated by a desire to implicate others for their crimes, he has not identified "particular facts" to indicate why the detectives would have had a reason to present false testimony in his specific case. Reed, 875 So. 2d at 431. Since Florida courts would have treated such evidence as inadmissible, it is immaterial for Brady purposes. We therefore find that Ferguson has not stated a valid Brady claim and that the district court thus properly denied Ferguson habeas relief for this claim.[33]

---

[33] We also note our agreement with the district court's finding that the evidence did not affect the proceedings because there was ample independent evidence to support his conviction in both cases.

E. <u>Failure to Correct False Testimony</u>

Ferguson also asserts that his due process rights were violated by the prosecution's eliciting and failing to correct false testimony from Edward Hartmann, a police officer at the Carol City trial. Hartmann testified that Ferguson was convicted of assault with intent to commit murder based on a 1969 shooting incident with Hartmann. In fact, Hartmann shot Ferguson four times, and Ferguson was acquitted of the assault charges, though he was found guilty of robbery in connection with the same incident. Ferguson contends that the prosecutor was aware of this discrepancy and violated his due process rights by failing to correct it. <u>See</u> <u>Giglio v. United States</u>, 405 U.S. 150, 92 S. Ct. 763 (1972). He also maintains that his trial and post-conviction counsel were unaware of the error and that his own incompetence prevented him from informing them of it.

Ferguson first made this claim in a supplement to his 3.850 motion, which he filed after the circuit court already had denied his motion in full. The circuit court denied his motion to supplement, finding that the motion was untimely because it was "predicated on facts which could have been raised at an earlier time." App. NN at 1399. The Florida Supreme Court summarily denied Ferguson's appeal on this issue.

47

The district court found this claim to be procedurally barred under Vining v. State, 827 So. 2d 201, 212 (Fla. 2002) (per curiam), in which the Florida Supreme Court held that such claims cannot be raised for the first time in a 3.850 motion unless they involved an error that was unknown to the defendant and his counsel at the time of trial and could not be uncovered through due diligence. The district court determined that Robbins was aware of the facts of the shooting incident at the time but did not object to the testimony and that Ferguson's alleged incompetence could not provide a basis for relief since the circuit court found him competent to stand trial. The court also noted that, even assuming the claim was not procedurally barred, the false testimony amounted to harmless error.

To make out a valid Giglio claim, a petitioner "must establish that (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material — i.e., that there is any reasonable likelihood that the false testimony could have affected the judgment." Davis v. Terry, 465 F.3d 1249, 1253 (11th Cir. 2006) (per curiam) (quotation marks, alterations, and citation omitted).

Under the then-applicable version of Rule 3.850, a defendant had to file a motion within two years of the date his conviction became final.[34] See Fla. R. Crim. P. 3.850(b) (1990). However, there was an explicit exception to this time bar if the defendant alleged that the facts upon which he based his claim were unknown to him or his attorney "and could not have been ascertained by the exercise of due diligence." Id. 3.850(b)(1). Furthermore, under that rule, a circuit court was not obligated to consider supplemental pleadings to a 3.850 motion if it had already ruled on the merits of that motion. See id. 3.850(f); State v. Green, 944 So. 2d 208, 218 (Fla. 2006). The failure to file within the time frame discussed in Rule 3.850 would procedurally bar a petitioner from bringing a federal habeas claim on that issue. See Whiddon v. Dugger, 894 F.2d 1266, 1267–68 (11th Cir. 1990).

As a preliminary matter, there may have been no Giglio violation here because the prosecutor arguably corrected the false testimony by entering into evidence Ferguson's correct conviction record, which included a reference to the not guilty verdict; however, no party called attention to the discrepancy. In any

---

[34] The current version of Rule 3.850 sets the time limits at two years for non-capital cases and one year for capital cases. See Fla. R. Crim. P. 3.850(b) (2009); In Re Rule of Crim. Procedure 3.851, 626 So. 2d 198, 199–200 (Fla. 1993) (per curiam) (discussing changes to Rule 3.850).

event, assuming there was a violation, Ferguson's claim would be procedurally barred. The motion to supplement was filed twelve years after the completion of trial and a month after the court denied Ferguson's 3.850 motion. Ferguson's counsel contends that neither they nor any of his prior counsel had knowledge of the incorrectness of Hartmann's testimony until July 1990 when they discovered documents indicating a contrary set of events. Even if we accept these facts, and there are reasons to doubt them,[35] Ferguson has not explained why his attorneys could not have obtained evidence of the discrepancy at an earlier date. In light of the extreme time gap between trial and the filing of the motion to supplement, along with the fact that evidence of the factual discrepancy was in the trial record, we find that Ferguson has not shown that he meets the due diligence requirement for the exception to Rule 3.850's time bar. We therefore conclude that Ferguson's Giglio claim is procedurally barred.[36]

---

[35] Robbins's cross-examination of Hartmann included multiple questions regarding in which parts of the body Ferguson had been shot, which indicates that he may have been aware of the basic circumstances of the incident prior to the conviction record being entered as evidence. Robbins also could have received knowledge of the events from Ferguson, who had been deemed competent to stand trial and can be assumed to have known his own criminal history, particularly after having his memory refreshed by Hartmann's testimony.

[36] We note that, even assuming that the claim was not procedurally barred, it would constitute harmless error, since the error would affect only one of the aggravating factors, Ferguson's past violent felony convictions, and there would still be two violent felony convictions to trigger that factor.

50

F. Jury Separation Claim

Ferguson contends that he was denied the effective assistance of appellate counsel because his counsel failed to raise on appeal the issue of the separation of the Hialeah jury during its deliberations. He first raised this argument during the state habeas proceedings, and it was rejected by the Florida Supreme Court. The court noted that such a claim would not be cognizable unless there had been a contemporaneous objection by trial counsel, assuming the judge gave the jury adequate cautionary instructions. It found that Ferguson's trial counsel failed to make such an objection and that the trial judge had instructed the jury not to discuss the case. In combination with the judge's other cautionary instructions during the trial, these facts rendered Ferguson's claim meritless. The district court agreed with the Florida Supreme Court's rationale and concluded that the failure to raise the argument would not constitute ineffective assistance of counsel.

Since Ferguson's state appellate counsel could be ineffective for not raising the jury separation claim only if that issue had been preserved for appeal, we must determine whether the issue was waived. See Rose v. Dugger, 508 So. 2d 321, 323 (Fla. 1987) (finding appellate counsel not deficient when jury separation issue was not preserved for appellate review). Under Florida law, "in a capital case, after the jury's deliberations have begun, the jury must be sequestered until it

51

reaches a verdict or is discharged after being ultimately unable to do so."

Livingston v. State, 458 So. 2d 235, 239 (Fla. 1984); see also Fla. R. Crim. P.

3.370(c). It is per se reversible error to permit a jury to separate over an objection

by defense counsel. See Pope v. State, 569 So. 2d 1241, 1243 (Fla. 1990) (per

curiam). Because "this per se rule is merely prophylactic in nature," counsel must

make a contemporaneous objection at trial to the separation when the court gives

cautionary instructions to the jury. Id. at 1244. As a result, if defense counsel

either makes no contemporaneous objection to separation or affirmatively

consents to it, the error is deemed waived if "adequate cautionary instructions

were given and there is no other showing that the defendant's right to a fair trial

was compromised." Id. In this case, it is undisputed that defense counsel made no

contemporaneous objection to the jury separation, and Ferguson does not argue

that his right to a fair trial was compromised. Accordingly, the error would be

waived if we find that the judge gave adequate cautionary instructions to the jury.

Throughout the course of the Hialeah trial, the judge gave the jury repeated

cautionary instructions about not discussing the case with anyone and not

consulting outside sources.[37] Immediately prior to the jury's beginning their

---

[37] He typically gave the jury such instructions before the court recessed for lunch or for the day, though there were occasions in which he did not give those instructions before a break.

deliberations, the judge instructed them as follows: "You may now retire to the jury room. My earlier discussions with you about not talking about this case you can forget about and you can talk about it all you want." App. LL, Vol. 6 at 1419. The jury deliberated for a few hours and then made a request to go home for the evening, which the trial judge granted. Before they left, he gave them the following instructions:

> There are some special admonitions that, of course, I think are appropriate.
>
> The case ought to stay here. Forget about it. Relax for the evening. . . .
>
> [In the morning] I would like everybody in here ready to go by nine and I would like you to report here rather than upstairs. . . .
>
> Come directly into the courtroom. . . . Go directly into the jury room and do not discuss the case until I am with you and tell you to do so.

Id. at 1425–26.

We find the judge's cautionary instructions to be adequate, especially in light of his earlier repeated admonitions. There is scant Florida case law discussing what would constitute an adequate cautionary instruction. The most analogous case is Engle v. State, 438 So. 2d 803 (Fla. 1983) (per curiam), which involved the failure to instruct the jury, immediately before it separated for

deliberations, that it was not to visit the scene of the crime. The judge in that case gave the jury such an instruction only at the beginning of the trial, which was three days before the jury separation. See id. at 809. The Florida Supreme Court found there to have been no reversible error due to the separation since the jury would have been "capable of remembering and heeding the judge's admonition not to visit the scene of the alleged crime without the necessity of repeating the same every time that the jury separates." Id.

The logic in Engle applies equally here. The Hialeah trial judge repeatedly advised the jurors not to discuss the case when they left the courtroom, and we find it reasonable to infer that the jury kept these warnings in mind at the end of the trial. Ferguson argues that these admonitions were undermined by the instruction immediately prior to the commencement of deliberations for the jury to "forget about" the earlier warnings. However, any such subversion would have been cured by the judge's instruction immediately prior to separation that the jurors should not discuss the case until he was with them and told them they could do so. Since the instructions likely were adequate and Ferguson's counsel did not object to the separation, we find that this issue was waived. As a result, Ferguson's appellate counsel would not be ineffective for failing to raise the issue

54

on appeal. We therefore conclude that the district court correctly denied Ferguson habeas relief with respect to this claim.

G. Resentencing by a New Judge

Ferguson also asserts that his federal due process rights were violated because he was resentenced to death by a new judge without the benefit of an evidentiary hearing. As previously noted, the trial judge who presided over both the Carol City and Hialeah trials retired during the pendency of Ferguson's appeal. After the Florida Supreme Court vacated and remanded Ferguson's death sentences, a successor judge resentenced him to death. On direct appeal from the resentencing, the Florida Supreme Court affirmed these sentences after determining that the successor judge had not abused his discretion in denying Ferguson's request for an evidentiary hearing before resentencing. The court noted that the successor judge had found Ferguson's offer of proof insufficient to merit reopening the case to hold such a hearing.

In the state habeas proceedings, Ferguson asserted that his resentencing violated the requirement, set forth in Corbett v. State, 602 So. 2d 1240 (Fla. 1992) (per curiam), that a substitute judge who did not hear the evidence presented as part of the penalty phase of a trial "must conduct a new sentencing proceeding before a jury to assure that both the judge and jury hear the same evidence that

55

will be determinative of whether a defendant lives or dies." Corbett, 602 So. 2d at 1244. The Florida Supreme Court concluded that, although the holding in Corbett applied to resentencings, it did not apply retroactively since it was not a fundamental constitutional change in the law. The court also found that Ferguson had not preserved the issue and that, as a result, his claim was procedurally barred. This procedural bar applied because, although Ferguson had requested an evidentiary hearing at the resentencing, he had not raised the issue of whether the judge could properly evaluate the record without such a hearing.

In the federal habeas proceedings, Ferguson argued that resentencing him without an evidentiary hearing violated notions of due process and fundamental fairness.[38] He asserted that Corbett and successor cases applied to his case because they reflected fundamental federal and state constitutional principles, the Florida Supreme Court's findings on the issue notwithstanding. Additionally, he maintained that his claim was not procedurally barred because Florida law has no contemporaneous objection requirement and any objection would have been futile in light of the Florida Supreme Court's instructions for the remand. The district

---

[38] Ferguson made an additional argument that the resentencing was contrary to Ring v. Arizona, 536 U.S. 584, 609, 122 S. Ct. 2428, 2443 (2002), in which the Supreme Court held that a jury, rather than a judge, must make all findings of fact necessary for eligibility for the death penalty. The district court rejected this argument, noting that we have construed Ring not to have retroactive application. See Sibley v. Culliver, 377 F.3d 1196, 1208 (11th Cir. 2004). Ferguson abandoned this argument on appeal.

56

court rejected these arguments.  It found that Ferguson's <u>Corbett</u> claims did not state a basis for granting habeas relief and that they solely implicated violations of state law for which federal habeas relief would be unavailable.

As a preliminary note, it is doubtful that there is a federal constitutional principle requiring the sentencing judge to have heard the evidence before imposing sentence.  We have never addressed this specific question, nor has any other federal court, as best as we can tell, and the cases Ferguson cites all address different concerns.  <u>See</u>, <u>e.g.</u>, <u>United States v. Cofield</u>, 272 F.3d 1303, 1306 (11th Cir. 2001) (per curiam) (articulating general rule that a district court must rehear witness testimony before rejecting magistrate judge's credibility findings but need not do so if it is accepting the findings).  In fact, the only instances in which a court has imposed a similar requirement are <u>Corbett</u> and its progeny, which are premised on state law.[39]  Additionally, the principle suggested by Ferguson may be at odds with a past cases in which we found that a substitute judge who read the trial record and transcripts was sufficiently familiar with a case to sentence a defendant.  <u>See</u> <u>United States v. Dowd</u>, 451 F.3d 1244, 1256 (11th Cir. 2006); <u>see</u> <u>also</u> <u>United States v. Casas</u>, 425 F.3d 23, 56 (1st Cir. 2005) (noting that "a

[39] Ferguson cites portions of the petitioner's brief in <u>Corbett</u> referencing federal constitutional bases for the asserted right; however, the Florida Supreme Court premised its decision entirely on state statutory and case law.  <u>See</u> <u>generally</u> <u>Corbett</u>, 602 So. 2d 1240.

replacement judge is ordinarily capable of assessing the credibility of the witnesses and the evidence at trial by a thorough review of the record") (quotation marks and citation omitted). Given that "[a] sentencing judge enjoys broad discretion to determine whether he can perform sentencing duties in a case he did not try," there does not seem to be a federal constitutional principle at issue here. United States v. McGuinness, 769 F.2d 695, 696 (11th Cir. 1985) (per curiam). As a result, Ferguson's claim likely involves solely state law issues that could not serve as the basis for a federal habeas claim. See Hendrix v. Secretary, Fla. Dep't of Corr., 527 F.3d 1149, 1153 (11th Cir. 2008) (per curiam) (noting that "a violation of state law is not a ground for federal habeas relief").

However, assuming arguendo that Ferguson's claim involves a federal constitutional principle, it still may be subject to a procedural bar. "A state court's rejection of a petitioner's constitutional claim on state procedural grounds will generally preclude any subsequent federal habeas review of that claim." Payne v. Allen, 539 F.3d 1297, 1312–13 (11th Cir. 2008) (quotation marks and citation omitted). For such a bar to apply, the state court's decision must rest on "an independent and adequate state ground." Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001) (quotation marks and citation omitted). We apply a three-part test to determine whether a state procedural rule is adequate and independent. See id.

58

First, the last state court to render judgment on the issue "must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim." Id. Second, "the state court's decision must rest solidly on state law grounds, and may not be intertwined with an interpretation of federal law." Id. (quotation marks and citation omitted). Third, the procedural rule has to be "adequate," meaning that it is not "applied in an arbitrary or unprecedented fashion." Id.

The Florida Supreme Court found Ferguson's due process claim to be procedurally barred because he failed to raise an objection on these grounds in the district court and thus had not preserved the issue for appellate review.[40] Florida law requires a defendant to make a "contemporaneous, specific objection . . . at the time of the alleged error" to preserve an issue for appellate review. Overton v. State, 976 So. 2d 536, 547 (Fla. 2007) (per curiam). In this case, the Florida Supreme Court clearly and expressly invoked that state law principle in deeming the claim procedurally barred, and there is no indication that it relied on anything

---

[40] The court noted that, although Ferguson's counsel requested an evidentiary hearing at resentencing, "he failed to raise the grounds now raised — that Judge Klein could not properly evaluate the aggravation and mitigation on the basis of a cold record." Ferguson V, 632 So. 2d at 56. This claim had been "raised on direct appeal from resentencing, but since it was not raised below it was procedurally barred at that time." Id. Because Ferguson's state habeas petition referenced principles of both state and federal due process, this procedural bar would apply to his federal due process claim.

besides state law in applying the procedural bar.[41] Additionally, though the court discussed the merits of Ferguson's <u>Corbett</u> claim, we can still apply the state procedural bar since it couched its discussion of the procedural bar in the alternative. See <u>Alderman v. Zant</u>, 22 F.3d 1541, 1549 (11th Cir. 1994). Since the first two prongs of the adequate and independent state grounds test were met, the only remaining question is whether the Florida Supreme Court applied the contemporaneous objection rule in "an arbitrary and unprecedented fashion." <u>Judd</u>, 250 F.3d at 1313.

Under the contemporaneous objection rule, an issue is properly preserved if the trial court knows that an objection was made, clearly understands the nature of the objection, and denies that request. See <u>Thomas v. State</u>, 419 So. 2d 634, 636 (Fla. 1982). Though "magic words are not needed to make a proper objection," counsel must articulate his concern with sufficient specificity "to inform the trial judge of the alleged error." <u>Williams v. State</u>, 414 So. 2d 509, 512 (Fla. 1982). In sum, "an objection must be specific enough to apprise the trial judge of the putative error and to preserve the issue for intelligent review on appeal." <u>Id.</u> at 511 (quotation marks and citation omitted).

---

[41] Although the Florida Supreme Court, in discussing the procedural bar, did not cite any statutory or case law to this effect, its statements reflect this general principle.

Ferguson maintains that he met the contemporaneous objection requirement because his counsel requested an evidentiary hearing before the successor judge, which was sufficient to put the judge on notice of his due process objection to the resentencing. He notes that the Florida Supreme Court does not require counsel "to pursue a completely useless course when the judge has announced in advance that it will be fruitless." Thomas, 419 So. 2d at 635 (quotation marks and citation omitted). He asserts that the Florida Supreme Court's instruction that "[a]n additional sentence advisory verdict by a jury" would not be required on remand constitutes just such an announcement. Ferguson I, 417 So. 2d at 646. As a result, any objection his counsel could have made beyond requesting an evidentiary hearing would have been pointless.

There is little basis in the record from which the trial court could have concluded that Ferguson's counsel was making a due process objection to being resentenced by a successor judge without a hearing. Rather, all of the objections raised addressed the failure to hold an evidentiary hearing to permit the introduction of further mitigating evidence. Additionally, Ferguson's counsel failed to object when, before resentencing Ferguson, the court specifically asked whether there was any legal reason why it should not resentence him. Even though Florida law provides some leeway with respect to the form and substance

61

of the objection, a request for an evidentiary hearing is insufficiently specific to apprise the trial court that a due process objection was being made. See Williams, 414 So. 2d at 511–12. In light of this failure, Ferguson has not triggered the futility exception, even taking into account the Florida Supreme Court's statement about the limited scope of remand and the fact that Ferguson's appellate counsel raised the issue on appeal from the resentencing.

Ferguson cites various cases in which the Florida Supreme Court has indicated that the failure to object does not automatically preclude review; however, upon closer examination, they do not evince an arbitrary or irregular application of the contemporaneous objection rule. Most of his references are to cases in which the Florida Supreme Court addressed alleged Hitchcock violations even though the defense counsel did not make that objection at trial. See, e.g., Mikenas v. Dugger, 519 So. 2d 601, 602 (Fla. 1988) (per curiam); Thompson v. Dugger, 515 So. 2d 173, 175 (Fla. 1987) (per curiam). In those instances, the court found it appropriate to consider the issue because "Hitchcock represented a sufficient change in the law to defeat the application of procedural default." Mikenas, 519 So. 2d at 602; see also Thompson, 515 So. 2d at 175. Additionally, in Smalley v. State, 546 So. 2d 720 (Fla. 1989) (per curiam), abrogation on other grounds recognized by Beltran-Lopez v. State, 626 So. 2d 163, 164 (Fla. 1993)

62

(per curiam), the defense counsel failed to object to a "heinous, atrocious, or cruel" jury instruction, but the court decided to hear the merits of the argument because a recent Supreme Court case had raised the issue of whether such an instruction was unconstitutionally vague under the Eighth and Fourteenth Amendments.  See Smalley, 546 So. 2d at 722.

The only case that may support Ferguson's argument is Elledge v. State, 346 So. 2d 998, 1002 (Fla. 1977), in which the court noted that counsel's failure to object to testimony "should not be conclusive of the special scope of review by this Court in death cases."  There appear to be no other state cases citing that principle, although we cited it in two decisions, and it may not be applicable outside of the context of admissibility of testimony.  See Mann v. Dugger, 817 F.2d 1471, 1475 (11th Cir. 1987), reh'g granted and opinion vacated on other grounds by Mann v. Dugger, 828 F.2d 1498 (11th Cir. 1987) (per curiam); Henry v. Wainwright, 686 F.2d 311, 314 (5th Cir. Unit B 1982), vacated on other grounds by Wainwright v. Henry, 463 U.S. 1223, 103 S. Ct. 3566 (1983) (mem.). In any event, one instance of not applying the contemporaneous objection rule does not indicate that the Florida Supreme Court has not adhered strictly to the rule.  As a result, there is no indication that the procedural bar was not an adequate state ground.

63

Because the contemporaneous objection rule is an adequate and independent state ground, we are barred from reviewing Ferguson's successor judge claim unless he can show cause and prejudice to excuse the procedural bar or that "a fundamental miscarriage of justice" would result. Zeigler, 345 F.3d at 1304 (quotation marks and citation omitted). Ferguson asserts that he has shown cause because it would have been fruitless to raise such an objection in light of the Florida Supreme Court's instructions on remand. However, "the futility of presenting an objection to the state courts cannot alone constitute cause for a failure to object at trial." Engle v. Isaac, 456 U.S. 107, 130, 102 S. Ct. 1558, 1573 (1982). Since Ferguson has cited no other rationale for his failure to object, we find that he has not shown cause for the procedural default. Furthermore, although Ferguson does not argue that applying the bar would constitute a "fundamental miscarriage of justice," we note that his situation would not fall under that description, which is reserved for "extraordinary" circumstances, such as "where a constitutional violation has resulted in the conviction of someone who is actually innocent." Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003). We therefore are procedurally barred from hearing Ferguson's due process claim. As a result, we conclude that the district court correctly denied Ferguson's habeas petition with respect to this claim.

H. Race-Based Peremptory Challenges

Ferguson contends that the prosecutor at both of his trials made race-based peremptory challenges. He asserts that these challenges were unconstitutional under Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986), and urges us to find that Batson applies retroactively in capital cases. He also maintains that his Batson claim would not be procedurally defaulted because his counsel at both trials were ineffective in not objecting to the race-based strikes. In the alternative, he argues that he is entitled to an evidentiary hearing to present evidence that would show the existence of systematic exclusion practices in violation of Swain v. Alabama, 380 U.S. 202, 85 S. Ct. 824 (1965).

Ferguson first raised the issue of racially-based peremptory challenges during the 3.850 proceedings, arguing that the State violated his right to a fair and impartial jury and equal protection rights by exercising such challenges, that his counsel was ineffective for failing to object to those challenges, and that Batson should apply to his claim. The circuit court denied this claim in two separate orders. It first struck the portion of the claim alleging a Batson violation because it found that violations of Batson, and a corresponding state case, State v. Neil, 457 So. 2d 481 (Fla. 1984), were not fundamental error nor applied retroactively and therefore could not be raised for the first time in a motion for post-conviction

65

relief. In a later order, the court found that Ferguson failed to show either that the jury was all white or that, even if it was, the State used its peremptory challenges to excuse black jurors solely because of their race. The court also determined that, even if the State had such race-based motives, Ferguson had not shown that his counsel was deficient or ineffective in failing to object nor that he had been prejudiced by such a failure. The Florida Supreme Court summarily denied this claim, finding it to be without merit.

The district court rejected all of Ferguson's arguments with respect to the alleged race-based peremptory challenges. It found that Ferguson's Batson claim failed because Ferguson could not show that blacks had been systematically excluded from his jury.[42] It also determined that, assuming that such challenges had occurred, there was no evidence that Ferguson was prejudiced by them. The court noted, in particular, that the State allowed white jurors to be empaneled even though they expressed objections to the death penalty but struck black jurors who had no such qualms.

Batson is not retroactively applicable to defendants whose convictions and direct appeals became final before the Supreme Court issued Batson. See Baldwin

---

[42] The court made no findings about Batson's potential retroactivity nor about whether his counsel was ineffective for not objecting to the challenges, although it may have implicitly rejected the latter claim.

v. Johnson, 152 F.3d 1304, 1315 n.10 (11th Cir. 1998); Jackson v. Herring, 42 F.3d 1350, 1356 (11th Cir. 1992). Ferguson contends that we should apply a different standard here because the Supreme Court has never explicitly stated that Batson does not apply retroactively in capital proceedings. However, there appear to be no cases in which courts have permitted such a retroactive application. In fact, in the case Ferguson references for the notion that the Supreme Court has not ruled on the issue, Williams v. Chrans, 945 F.2d 926 (7th Cir. 1991), the Seventh Circuit found that Batson did not establish a new rule under Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060 (1989), and thus would not apply retroactively in capital decisions. See Williams, 945 F.2d at 946.

Since Batson does not apply to Ferguson's peremptory challenge argument, we review the issue under the standards established in Swain. See Baldwin, 152 F.3d at 1315 n.10. To state a claim under Swain, a habeas petitioner must show more than that the prosecutor deliberately used peremptory strikes to remove African-Americans from the jury; rather, he has to "demonstrate that the prosecutor, over time, systematically excluded blacks from serving on petit juries." Id. at 1315. Prosecutors are presumed to have utilized their strikes in a fair and impartial manner. See Jackson, 42 F.3d at 1356. A petitioner can overcome this presumption by presenting evidence that would "manifestly show an intent on the

67

part of the prosecutor to disenfranchise blacks from traverse juries in criminal trials," including statistical evidence or testimony from those who have witnessed the pattern of systematic exclusion. Id.

As a preliminary note, the actual racial composition of the jury at both trials is unclear. Since none of the attorneys at either trial could remember the racial makeup of the jury, the principal evidence comes from testimony at the 3.850 evidentiary hearing of a law student, Chad Roberts, who compared the names of members of the jury pool to voter registration records to determine the race of those in the pool. Roberts stated that, based on his research, all twelve of the jurors and both alternates in the Carol City trial were white, that four of the twenty-nine other members of the jury pool were definitely black, and that three of those four were peremptorily challenged by the State even though they had no objection to the death penalty. He also determined that the twelve jurors and two alternates in the Hialeah trial were white, that six of the thirty-six other jury pool members were definitely black, and that five of those six were peremptorily challenged by the State.[43] Four of those five struck pool members had no

---

[43] There was one other peremptorily-challenged member of the jury pool who Roberts thought was likely black, though he could make no definitive finding.

objection to the imposition of the death penalty, although eight of the impaneled jury members stated that they had such objections.

Assuming that the juries were as Roberts testified, Ferguson has not provided any evidence of systematic exclusion by the prosecutor in both cases, Robert Kaye. At the 3.850 proceedings, Ferguson called John McGuirk, who practiced as a criminal defense attorney in the late 1970s and early 1980s. McGuirk testified that he believed state attorneys at the time were "very conscious of the race of the juror" depending on the type of case and that he experienced some situations in which a prosecutor appeared to be making peremptory challenges based on race. App. NN at 2910–11. He also stated that he made such objections at the time, that he could think of no reason why a defense attorney would not make such an objection if the State appeared to be using race-based peremptory challenges, and that he believed excluding blacks from the jury could affect the outcome of the trial. However, McGuirk also testified that he did not believe that the prosecutor in Ferguson's trials systematically excluded black jurors and noted that state attorneys had the same interest in the race of the jurors as any trial lawyer would have had. Additionally, when Kaye testified at the 3.850 hearing, he denied having struck jurors because of their race and stated that he would not have done so for fear of having the verdict attacked on the basis of the

racial makeup of the jury.[44] All of this evidence, taken together, is insufficient to show or even strongly suggest that Kaye systematically struck jurors based on their race. Ferguson thus has not established that a Swain violation occurred. Furthermore, since there was no Swain or Batson violation, Ferguson's trial counsel could not be ineffective for failing to object to the challenges.

We likewise find that Ferguson is not entitled to an evidentiary hearing on the issue. Ferguson asserts that we should grant such a hearing because he has provided strong evidence of discriminatory practices even though the circuit court in the 3.850 proceedings denied his request for discovery on the issue. However, this situation does not trigger the district court's duty to hold an evidentiary hearing. See Kelley, 377 F.3d at 1334. The district court therefore had the discretion to grant or deny the request, and there appears to be no basis for finding that it abused this discretion. See id. at 1333. Though the state court denied his request for discovery, it did so after it had already struck the Batson portion of his claim. Furthermore, there was a subsequent evidentiary hearing during those proceedings, at which Ferguson presented evidence on a range of topics, including the peremptory challenges. Ferguson thus has had ample opportunity to present

---

[44] At the 3.850 hearing, Kaye could not recall why he peremptorily struck particular members of the jury panel in the Hialeah case when questioned about it.

70

evidence on the issue. We therefore conclude that the district court correctly denied Ferguson's habeas claim with respect to this issue and that it did not abuse its discretion in denying an evidentiary hearing.

I. *Ex Parte* Contacts During Post-Conviction Proceedings

Ferguson asserts that he did not receive full and fair state post-conviction proceedings because of ex parte contacts between the prosecutor and the post-conviction judge. He requests that we either hold a new federal court hearing in which no deference would be given to the state courts' findings of fact or, in the alternative, that we permit an evidentiary hearing to investigate the nature and extent of these ex parte contacts.

In January 1988, Ferguson's counsel learned from a state attorney that there had been ex parte communications between state counsel and Judge Friedman, the judge initially assigned to Ferguson's 3.850 motion, allegedly regarding the rescheduling of Ferguson's psychiatric evaluations. At a 19 May 1988 hearing before Judge Snyder, to whom the case had been reassigned from Judge Friedman, Ferguson's counsel complained about these communications. Judge Snyder stated that he would be open to ex parte communications if they would help expedite the scheduling of the examinations and that he would inform Ferguson's counsel

71

about any such communications immediately after they occurred.[45]  Shortly

thereafter, there was an <u>ex parte</u> contact between the State and Judge Snyder,

allegedly about scheduling issues, about which Ferguson's counsel was informed

promptly.  On a 26 May 1988 conference call between the parties and Judge

Snyder, Ferguson's counsel indicated that he believed that such contacts were

improper and violated Ferguson's due process and Sixth Amendment rights.

On 23 February 1989, Judge Snyder denied Ferguson's motion to stay the

3.850 proceedings due to Ferguson's purported incompetency.  On 22 March

1989, Ferguson's counsel filed a motion requesting that Judge Snyder disqualify

himself from the proceedings because the <u>ex parte</u> contacts made the judge unable

to be impartial or maintain the appearance of impartiality.  The circuit court denied

this motion, which it found to be legally insufficient for three reasons:  (1) it did

not comply with the technical requirements of Florida Statute 38.10 and Florida

---

[45] In particular, Judge Snyder stated to the state attorney,

> I am not worried about Mr. Prettyman [Ferguson's counsel] saying you [the state attorney] can't talk to me.  You want something done that I have ordered you to do and you want my help in doing it, just call me, okay?  He [Mr. Prettyman]  doesn't like it, that's okay.  I never worry about <u>ex parte</u> because I don't <u>ex parte</u> anybody.  If there is anything that ever has to be done, Mr. Prettyman, you'll be notified immediately.  But, I am not going to let that stand in the way to have an entire hearing and bring a lawyer in from Washington and we still haven't accomplished anything.

App. NN at 1030–31.

Rule of Criminal Procedure 3.230; (2) it was untimely and intended solely to delay the implementation of an adverse ruling; and (3) it did not set forth a sufficient factual basis for a well-founded belief that the court would be prejudiced against Ferguson. Ferguson's counsel subsequently sought a writ of prohibition with the Florida Supreme Court, which the court summarily denied.[46] He then filed a petition for a writ of certiorari with the United States Supreme Court, which the Court denied.

The district court denied Ferguson's claim that the ex parte communications deprived him of a full and fair hearing. The court treated this issue as an argument that the factual findings of the circuit court in the 3.850 proceedings were not entitled to a presumption of correctness. It noted that the circuit court had asserted that the ex parte communications solely addressed scheduling issues, and found that there was no evidence in the record either to contradict this assertion or to suggest that the circuit court's factual findings had been affected by the ex parte communications. As a result, the district court concluded that the circuit court's factual findings were entitled to a presumption of correctness.

---

[46] The district court's opinion in the federal habeas proceedings mentions an ex parte phone call Judge Snyder made to Ferguson's counsel at some point in time subsequent to the Florida Supreme Court's denial of the writ. The parties do not reference this in the briefs, and, since it did not involve communications with opposing counsel, it likely would not have caused Ferguson any prejudice.

73

Although the district court did not address the issue explicitly, this claim may be subject to a procedural bar. The circuit court's denial of the motion to recuse was based on at least one state procedural ground, the untimely filing of the motion, in addition to the more substantive ground of failing to show a factual basis for fear of prejudice due to the contacts.[47] For the purposes of a possible procedural bar, this reasoning would be controlling since the Florida Supreme Court summarily denied the petition, and we treat such summary denials as implicitly accepting both the judgment and the rationale of the trial court. See Harmon v. Barton, 894 F.2d 1268, 1273 (11th Cir. 1990) (noting that "the clear inference to be drawn from the appellate court's per curiam affirmance of the trial court's decision explicitly based on procedural default is that the court accepted not only the judgment but the reasoning of the trial court"). In this case, the circuit court's rationale is couched in the alternative, so we can and should apply the timeliness procedural bar if it was correctly applied. See Alderman, 22 F.3d at 1549.

---

[47] The other basis for denying the claim, the failure to file affidavits with the motion, as required under Fla. R. Crim. P. 3.230, also is arguably procedural and thus could bar Ferguson's claim. The State does not discuss this rationale, however, and Ferguson likely has shown cause for the default — that he did not have first-hand knowledge of the contents of the ex parte contacts and thus could not provide affidavits — as well as resulting prejudice, i.e., that his claim was barred as a result of this failure. Furthermore, as discussed infra, Rule 1.432 of the Florida Rules of Civil Procedure likely applies here instead and it has no affidavit requirement.

74

We thus must determine whether the procedural bar constitutes an adequate and independent state ground. See id. In this case, Ferguson's counsel brought the original motion to recuse pursuant to Florida Rule of Criminal Procedure 3.230 and Florida Statute § 38.10. Since Florida courts treat 3.850 proceedings as civil actions, Ferguson probably should have cited Rule 1.432 of the Florida Rules of Civil Procedure, which governs disqualification of judges in civil cases, rather than Rule 3.230.[48] See State v. White, 470 So. 2d 1377, 1378 (Fla. 1985) (describing 3.850 motions as civil actions). In any event, the relevant timeliness standards for all three of these provisions were essentially the same at the time the motion was filed, so this does not affect our analysis.[49] Neither Rule 3.230 nor Florida Statute 38.10 discussed timeliness for a post-conviction disqualification motion. The only time bar mentioned in the versions of those provisions then in effect was Rule 3.230's requirement that the motion be filed "no less than 10 days before the time the case is called for trial unless good cause is shown for failure to

---

[48] The State raised this issue in its opposition to the motion; however, the circuit court did not address it and instead analyzed the issue under Rule 3.230. The Florida Supreme Court has referenced Rule 3.230 in one case involving a motion to disqualify a post-conviction judge; however, it did so in passing and without any discussion of whether it should be applied. See Suarez v. Dugger, 527 So. 2d 190, 192 (Fla. 1988) (per curiam).

[49] Both Rule 1.432 and Rule 3.230 have now been replaced by Rule 2.330 of the Florida Rules of Judicial Administration, which requires motions to disqualify to be filed "within a reasonable time not to exceed 10 days after discovery of the facts constituting the grounds for the motion." Fla. R. Jud. Admin. 2.330 (2009).

75

so file within such time."[50]  Fla. R. Crim. P. 3.230(c) (1989 ed.); see Fla. Stat. § 38.10.  The applicable version of Rule 1.432, on the other hand, required the movant to file the motion "within a reasonable time after discovery of the facts constituting grounds for disqualification."  Fla. R. Civ. P. 1.432(c) (1989 ed.).  In addition to this statutory guidance, Florida courts have deemed a motion for recusal to be untimely if the moving party waits to file the motion until after it has suffered an adverse ruling, unless the party can show good cause for the delay.  See Fischer v. Knuck, 497 So. 2d 240, 243 (Fla. 1986).

The first two prongs of the adequate and independent state grounds test have been met here.  The last state court to render judgment on the issue clearly and expressly invoked state procedural grounds to resolve the claim.  See Judd, 250 F.3d at 1313.  Additionally, that court's decision rested solidly on state law grounds, without any federal issues coming into play.  See id.  The only relevant question therefore is whether the procedural bar was "applied in an arbitrary or unprecedented fashion."  Id.

---

[50] The Florida Supreme Court, after the repeal of Rule 3.230, commented in passing that the rule "required that a motion to disqualify be made within ten days after discovery of the facts forming the basis for the motion."  Schwab v. State, 814 So. 2d 402, 407 n.6 (Fla. 2002) (per curiam).  However, we can find no cases supporting that interpretation while the rule was still in effect.

76

In this case, Ferguson's counsel was aware of the ex parte contacts as early as January 1988 yet failed to file the motion seeking disqualification until more than a year later. Furthermore, in that motion he admitted that he decided to file the motion only after suffering an adverse ruling on the motion to stay. Accordingly, the motion would be untimely under Florida law unless Ferguson can show good cause for the delay in filing. See Fischer, 497 So. 2d at 243. Ferguson asserts that this delay was acceptable because his counsel detected Judge Snyder's potential bias only when that ruling came out. However, this contention is belied by the fact that his counsel had objected on multiple prior occasions to the ex parte contacts but did not file a motion in those instances. In light of this background, the decision to wait until after the adverse ruling appears to be the kind of delaying tactic that Florida courts have frowned upon.[51] See id. at 242 (noting that a recusal motion was "designed to frustrate the process by which petitioner suffered an adverse ruling"); see also Marcotte v. Gloeckner, 679 So. 2d 1225, 1226 (Fla. Dist. Ct. App. 1996) (per curiam) (deeming timely a recusal motion filed after an adverse ruling where the underlying facts were discovered only after that ruling). Given this precedent, there is no indication that the circuit

---

[51] As the circuit court noted, this delaying intent also is evidenced by the fact that Ferguson's counsel sought to have all prior orders by the circuit court vacated in addition to having the judge recuse himself.

77

court arbitrarily applied the procedural bar. See Judd, 250 F.3d at 1313. Since Ferguson has not alleged cause or prejudice for the procedural default (other than the contention that the procedural rule was not regularly followed) nor does there appear to be any fundamental miscarriage of justice, we cannot hear the claim. See Zeigler, 345 F.3d at 1304. The district court thus correctly denied Ferguson's habeas claim with respect to this issue.[52]

J. Issues Relating to Ferguson's Competency

The parties raise three issues with respect to Ferguson's competency and right to be competent during the various habeas and post-conviction proceedings. Ferguson appeals the district court's determination that he was competent to proceed with his federal habeas claim as well as its dismissal of his federal habeas claim asserting a due process violation for holding the 3.850 proceedings despite

---

[52] Additionally, even if the claim had not been procedurally defaulted, it would fail. Because Ferguson has not alleged any actual bias, he has not established a federal violation, and we cannot review his purely state law claim. See Hendrix, 527 F.3d at 1153–54. Furthermore, as a matter of legal ethics, "it is well-established that an ex parte communication which does not concern the merits of the case is permissible." Drobny v. Commissioner, 113 F.3d 670, 680 (7th Cir. 1997).

his alleged incompetency.[53]  The State cross-appeals the district court's decision to hold an evidentiary hearing on the question of competency.

1. Competency to Proceed with 3.850 Post-Conviction Claim

Ferguson contends that he is entitled to a de novo evidentiary hearing because the 3.850 proceedings were held while he was incompetent.  He asserts that the district court erred in finding both that he had no federal constitutional right to be competent during those proceedings and that the 3.850 court's competency determination was supported by the record.

The circuit court held three days of evidentiary hearings in August and October 1988 on the question of competency.  The court subsequently issued an order finding Ferguson competent and denying his motion to stay the proceedings because of his incompetency.  The Florida Supreme Court initially issued a summary denial of Ferguson's appeal related to this decision.  See Ferguson IV, 593 So. 2d at 513.  The court had the opportunity to reexamine this evidence in greater depth in a subsequent, post-Carter appeal.  After determining that Carter applied retroactively, the court looked at whether the evidence supported the

_____

[53] Ferguson's statement of issues mentions only the district court's violating his right not to proceed while incompetent, which seems to refer to that court's decision finding him competent to proceed with the federal habeas claim.  However, the body of his initial brief discusses due process violations with respect to his competency during the 3.850 proceedings.

circuit court's competency findings. It recounted the evidence presented at the hearing, essentially agreeing with the circuit court's descriptions, acknowledged that the evidence regarding Ferguson's competency was conflicting, and found that there was adequate support for the circuit court to reject the opinions of those doctors finding Ferguson incompetent. As a result, the court concluded that the circuit court had not abused its discretion in denying the motion to stay.

Even if Ferguson had a federal due process right to be competent during the 3.850 proceedings,[54] these competency findings are entitled to a presumption of correctness, which we may ignore "only if the petitioner shows by clear and convincing evidence that the state court's determination was not fairly supported by the record." Turner v. Crosby, 339 F.3d 1247, 1273 (11th Cir. 2003) (quotation marks and citation omitted); see Hauser ex rel. Crawford v. Moore, 223 F.3d 1316, 1323 (11th Cir. 2000) (per curiam). "This deference requires that [we] more than

_____

[54] There is reason to doubt that such a right exists. In Carter, the Florida Supreme Court found that there was a right to be competent during 3.850 proceedings. See Carter, 706 So. 2d at 875. The court did not base its decision on an express constitutional ground; however, in Ferguson VI it noted that Carter reflected "considerations of due process, considerations which have previously guided this Court's hand in the postconviction arena" and cited cases in which it had referenced Fifth Amendment due process concerns. See Ferguson VI, 789 So. 2d at 311. That statement notwithstanding, the right to competency appears to stem principally from the right to collateral counsel under Florida law. See Carter, 706 So. 2d at 875 (noting that "the right to collateral counsel, as well as the postconviction proceedings themselves, would be practically meaningless" if the petitioner was not competent to assist counsel). As the district court noted, federal courts generally have rejected attempts to make a federal due process claim based on ineffective assistance of state post-conviction counsel. See, e.g., Ogan v. Cockrell, 297 F.3d 349, 357 (5th Cir. 2002).

simply disagree with the state court before rejecting its factual determinations. Instead, [we] must conclude that the state court's findings lacked even fair support in the record." Turner, 339 F.3d at 1273 (quotation marks and citation omitted). After carefully examining the record from the competency hearing, we find that the evidence fairly supported the finding that Ferguson was competent to proceed with his 3.850 claim. Accordingly, we conclude that the district court properly denied both Ferguson's request for an evidentiary hearing and his habeas claim with respect to this issue.

2. Competency to Proceed with Federal Habeas Claim

Ferguson asserts that the district court's determination that he was competent to proceed with his federal habeas claim was clearly erroneous because the evidence established that his paranoid schizophrenia prevented him from providing full assistance to his counsel during the federal habeas proceedings. Since we have not reviewed a habeas competency finding before, we have not had occasion to address the relevant standards of review. We generally review a district court's determinations that a defendant is competent to stand trial for clear error, and the parties agree that the same standard of review should apply here. See United States v. Hogan, 986 F.2d 1364, 1372 (11th Cir. 1993) (using "clearly erroneous standard" to evaluate finding that petitioner was competent to stand

81

trial).  The applicable competency standard is whether the petitioner has both "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him."  Moore v. Campbell, 344 F.3d 1313, 1321 (11th Cir. 2003) (per curiam) (quotation marks and citation omitted).

After holding a competency hearing, the district court found that there was credible evidence to show that Ferguson at one time suffered from a mental disorder that had symptoms associated with paranoid schizophrenia and that, since 1994, his mental health has improved so as to make him "no longer a disruptive member of his prison environment."  R4-107 at 15.  It also found that his disorder was in remission and that he was malingering or exaggerating his symptoms.  See id.  The court further found that Ferguson had the "mental competency, clarity of thought, directness of speech, and motivation to advance his interests and objectives when faced with a variety of adverse circumstances."  Id. at 15, 17.  The court made a number of other factual findings including that the totality of his test results supported the conclusion that he was "consciously reporting symptoms of mental illness that he [was] not presently experiencing" and that his unwillingness to cooperate with his counsel was based on a desire to avoid punishment.  Id. at 17, 20.  Based on all of this, the court concluded that Ferguson "ha[d] sufficient

present ability to consult with counsel with a reasonable degree of rational understanding — and ha[d] a rational as well as factual understanding of the proceedings against him." Id. at 21–23.

After thoroughly reviewing the transcripts and evidence presented at the evidentiary hearing, we find that there was ample evidence to support the district court's findings. Accordingly, assuming arguendo that there is a federal right to be competent during federal habeas proceedings,[55] we conclude the district court did not clearly err in deeming Ferguson competent to proceed with his federal habeas petition and did not abuse its discretion in denying his motion to stay. See American Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc., 743 F.2d 1519, 1525 (11th Cir. 1984) (noting that a "motion to stay is directed to the district court's sound discretion"). In light of this conclusion, we need not address the State's cross-appeal regarding whether the district court improperly granted an evidentiary hearing on the issue.

---

[55] The Ninth Circuit has found that there is a statutory right to be competent; however, the other circuits to have discussed the issue have assumed, without deciding, that such a right exists and resolved the competency issue on other grounds. See Rohan ex rel. Gates v. Woodford, 334 F.3d 803, 807–17 (9th Cir. 2003); see also Paul v. United States, 534 F.3d 832, 845–48 (8th Cir. 2008); Holmes v. Buss, 506 F.3d 576, 578–79 (7th Cir. 2007).

## III. CONCLUSION

Ferguson filed this appeal seeking federal habeas relief with respect to nine different claims in his habeas petition. He also appeals the district court's order denying his motion to stay the proceedings based on his alleged incompetency. The State cross-appeals the district court's decision to hold an evidentiary hearing on the issue of Ferguson's competency. We hold that Ferguson was not entitled to habeas relief on any of his claims. Furthermore, insomuch as the district court did not clearly err in finding Ferguson competent to proceed with his habeas petition and did not abuse its discretion in denying his motion to stay the federal habeas proceedings, we need not consider the rationale for the State's cross-appeal. Accordingly, we AFFIRM the district court's denial of Ferguson's habeas petition and his motion to stay the habeas proceedings.

**AFFIRMED.**